1  **KAZEROUNI LAW GROUP, APC**
2  Abbas Kazerounian, Esq. (SBN: 249203)
   ak@kazlg.com
3  245 Fisher Avenue, Suite D1
   Costa Mesa, CA 92626
4  Telephone:   (800) 400-6808
   Facsimile:    (800) 520-5523
5

6  [Additional Counsel On Signature Page]

7

8  *Attorneys for Plaintiff*

9               **UNITED STATES DISTRICT COURT**
10              **CENTRAL DISTRICT OF CALIFORNIA**

11  **DIANA SOLORIO,**            |  **Case No.:**
12  **Individually and On Behalf of**
    **All Others Similarly Situated,**  |  **CLASS ACTION COMPLAINT FOR**
13                                  **DAMAGES AND INJUNCTIVE**
                                    **RELIEF FOR VIOLATIONS OF:**
14          **Plaintiff,**
                                    1) **VIOLATIONS OF CALIFORNIA**
15                                     **AUTO RENEWAL STATUTE**
              **v.**                   **("ARL"), BUS. & PROF. CODE §§**
16                                     **17600, *ET SEQ.*;**
17  **SEMPRIS, LLC d/b/a**
    **PROVELL, INC. d/b/a TASTE**   2) **VIOLATIONS OF CALIFORNIA**
18  **FOR SAVINGS; and DOES 1**       **UNFAIR COMPETITION LAW**
    **through 10, inclusive,**        **("UCL"), BUS. & PROF. CODE §§**
19                                     **17200, *ET SEQ.*;**
20          **Defendants.**        3) **THE RACKETEER INFLUENCED**
                                       **AND CORRUPT ORGANIZATIONS**
21                                     **ACT, 18 U.S.C. § 1962(C);**

22                                  4) **CONSPIRACY TO VIOLATE THE**
                                       **RACKETEER INFLUENCED AND**
23                                     **CORRUPT ORGANIZATIONS ACT,**
                                       **18 U.S.C § 1962(D);**
24
                                    5) **CONVERSION.**
25

26                                  **JURY TRIAL DEMANDED**

27

28

*(left margin, rotated)* **Kazerouni Law Group, APC**
Costa Mesa, California

Case #                                          *Solorio v. Sempris LLC et al.*

**CLASS ACTION COMPLAINT**

**Kazerouni Law Group, APC**
Costa Mesa, California

INTRODUCTION

1. Plaintiff, DIANA SOLORIO ("Plaintiff" or "Mrs. Solorio"), brings this Class Action Complaint to challenge the illicit practice of SEMPRIS, LLC d/b/a PROVELL, INC. d/b/a TASTE FOR SAVINGS ("Defendant" or "Sempris") and DOES 1 through 5 (together the "Defendants") of clandestinely obtaining customers' credit card information from telemarketers and then subsequently charging these credit cards on a monthly basis, despite never obtaining the consumers' consent or providing the proper autorenewal disclosure required under California law.

2. California enacted the Automatic Purchase Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., in an effort to end the ongoing practice of charging consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for repeated shipments of a product or deliveries of service.

3. Together, Defendants have committed a widespread criminal conspiracy wherein they acted in concert to obtain and use credit card numbers so that Defendants could enroll unsuspecting consumers in membership programs without the customers' knowledge or consent, which constitutes a violation of the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. §§ 1962, *et seq*. and other laws.

4. Plaintiff does not presently know the names of the DOE defendants who, upon information and belief, are various telemarketing companies who agreed with Sempris to engage in a criminal conspiracy as alleged herein for financial gain.

5. Plaintiff makes these allegations upon information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's Counsel, which Plaintiff alleges on personal knowledge.

6. Unless otherwise indicated, the use of any of Defendant's names in this

CLASS ACTION COMPLAINT

Kazerouni Law Group, APC
Costa Mesa, California

Complaint include all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogatees, representatives, and insurers of the named Defendants.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction because this case arises out of violation of federal law. 18 U.S.C. §§ 1964, *et seq*.

8. This Court has jurisdiction over the California state law claims pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction over Defendants exists, as Sempris advertises within this judicial district, and each of the Defendants do substantial business within this judicial district.

10. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b) because Plaintiff resides in this judicial district, the harm to Plaintiff occurred within the State of California, and Defendants are subject to personal jurisdiction in this judicial district as each conducts business within this judicial district.

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California, County of Los Angeles.

12. Plaintiff is informed and believes, and thereon alleges, that Sempris is a Delaware corporation with its principal place of business in Minnetonka, Minnesota.

13. Sempris utilizes at least two telemarketing call centers, one in Maine and one in Colorado, to obtain consumer information on Sempris' behalf. Plaintiff reserves the right to name these DOE entities after their identities become known to Plaintiff.

///

///

**NATURE OF THE CASE**

14. Sempris develops and manages membership reward clubs.

15. In addition to calling consumers directly, Sempris hires call centers to sell its memberships to consumers nationwide.

16. Upon information and belief, Sempris provides detailed instructions to the call centers to generally follow a script when speaking with customers.

17. By using "as seen on T.V." products as bait, these call centers receive a large number of calls from consumers nationwide.

18. In a process called "upselling," these call centers try to convince incoming callers to purchase Sempris' memberships in addition to the product desired by the consumer when the consumer calls into the call centers.

19. Upon information and belief, Sempris pays these call centers on a commission for each consumer that the call center enrolls in one of Sempris' membership program. In turn, the call centers also provide their salespersons with a commission for each consumer that is enrolled in one of Sempris' membership programs.

20. Sempris has utilized such business model for several years, including under different names.

21. Sempris started out as a company named Damark International Inc. ("Damark").

22. Beginning in 1998, Damark was run by George Richards as Chief Executive Officer ("CEO").

23. Soon thereafter, Damark was sued by several consumers claiming that the company used deceptive marketing tactics to sell its memberships.

24. In 1999, Damark was fined $37,000 from the State of Minnesota because it had illegally obtained customer's credit card numbers and then charged those customers membership fees without their consent.

25. As part of the settlement, Damark issued an official "Assurance of

**Kazerouni Law Group, APC**
Costa Mesa, California

Discontinuance."

26. Shortly thereafter in April of 2001, Damark opened a sub-unit which it called Provell Inc. ("Provell"), which began enrolling individuals into membership programs.

27. George Richards was named CEO of Provell.

28. In 2002, Damark filed for bankruptcy, and Provell emerged with the assets including an ongoing stream of membership payments from consumers.

29. For several years, Provell operated under the same business model, accumulating thousands of consumer complaints in the process.

30. In a cyclical fashion, in January of 2011 Sempris "purchased" Provell's assets, and named George Richards as its CEO.

31. Sempris periodically changes its name in an effort to avoid detection from the marketplace.

32. As Congress notes, "[t]he most obvious market correction for the problem is the adverse reputational consequences for the companies involved in a practice that generates angry, voluminous complaints of account theft by consumers. In fact, membership club sellers routinely change their trade names (... Damark became Provell ...), which might suggest some concern of this sort."[1]

33. At the direction of George Richards, Sempris, through commission based calling centers and merchants, continues to charge consumer credit cards without consumers' consent.

///

///

///

---

[1] *Aggressive Sales Tactics on the Internet and Their Impact on American Consumers*: *S. Hrg 111-513 Before the H. S. Committee on Commerce, Science, and Transportation,* 111th Cong. 44 fn. 7 (2009).

## FACTUAL ALLEGATIONS

34. Plaintiff alleges as follows, on information and belief, formed after a reasonable inquiry under the circumstances.

35. Due to the side effects of her battle with cancer, Mrs. Solorio found that her hair was lacking the volume and health that it once had.

36. Within the last few years, while watching television, Mrs. Solorio saw an infomercial about a product that was advertised to help treat hair loss and increased circulation in her scalp, which product was made by a company called Keranique.

37. As a result of the infomercial, Mrs. Solorio learned that she could receive hair care products through the mail for a set monthly payment.

38. In or around March of 2017, Mrs. Solorio called "1-800" telephone number advertised on the infomerical.

39. Upon information and belief, Keranique hired two telemarketing firms in both Colorado and Maine to field calls that come in through its advertised number.

40. Upon information and belief, Sempris has contracted with these telemarketing calling centers to "upsell" the Keranique product.

41. By calling the phone number, Mrs. Solorio was connected with one of these two calling centers.

42. During the call, Mrs. Solorio notified the salesman on the line ("Salesman") that she was interested in purchasing one of Keranique's haircare products.

43. After describing the product that she wished to purchase, Salesman offered Mrs. Solorio the chance to also purchase a membership in Taste for Savings. Mrs. Solorio declined the offer and stated that she was only interested in the hair products.

44. After Mrs. Solorio gave Salesman the information associated with her credit card ending in "4038," Salesman in a quickened and hushed tone stated that

Kazerouni Law Group, APC
Costa Mesa, California

Mrs. Solorio was providing consent for her credit card to be charged for the Keranique product and a Taste for Savings club membership.

45. Such a method of sneaking a separate product into confirmation language is called a "cramming" scam, and it is widely used by the telemarketers that upsell Sempris' products.

46. Again, Mrs. Solorio demanded that the Salesman take off the membership and clarified that she only wished to purchase the Keranique product.

47. At no time was Mrs. Solorio conspicuously provided any information regarding the details of recurring charges for Taste for Savings membership or any method to opt out of the recurring charges.

48. Upon information and belief, Sempris, and its agents (including the two call centers), do not have any policies or procedures instructing telemarketers to conspicuously announce automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner.

49. Upon information and belief, Sempris, and its agents (including the two call centers), intentionally fail to clearly and conspicuously announce automatic renewal offer terms or continuous service offer terms when communicating with consumers.

50. Without having first been informed of automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner over the phone, on March 27, 2017, Mrs. Solorio was charged $1.95 twice by "WC*GROCERY COUPONS 800-4751942 MN," only moments after being charged for the Keranique product.

51. Upon information and belief, WC*GROCERY COUPONS and Taste for Savings are programs originally created by Provell, Inc., but are now sold by Sempris.

52. Approximately a month after the initial purchase, Mrs. Solorio called Keranique's customer service telephone number and informed them that she

was not interested in their program, and her monthly membership with Keranique was canceled.

53. Going unnoticed, Sempris then continued to withdraw $24.95 from Mrs. Solorio's account on or about the 27th of each month for close to a year and a half, for a total of approximately $376.20.

54. On or about June 21, 2018, when Mrs. Solorio saw the charges and called the telephone number associated with the charge to inquire where the payments were going.

55. Sempris told Mrs. Solorio that she had purchased the Taste for Savings club membership.

56. Sempris then claimed that it had mailed Mrs. Solorio a coupon book sometime in the past year and a half, and that it had been charging her credit card ever since.

57. Mrs. Solorio never received said "coupon book."

58. After again denying that she had ever agreed to purchase the membership, Mrs. Solorio requested a refund for all of the monthly charges. Sempris informed Mrs. Solorio that it would mail her a refund request form.

59. In a letter dated August 10, 2018, Sempris informed Mrs. Solorio that she would not incur any more charges. However, Sempris claimed that it "confirmed that your purchase of Taste for Savings was made either by you or an authorized user of the card ending in 4038. Therefore, based on our enrollment records, you are not eligible for a refund."

60. On or about August 17, 2018, Ms. Solorio filled out and mailed off a form provided by Sempris, which requested that Sempris look into the matter more thoroughly.

61. Sempris never responded to this second, more detailed, request by Mrs. Solorio.

62. Appearing that Sempris will not provide Mrs. Solorio with any relief from

**Kazerouni Law Group, APC**
Costa Mesa, California

1    their fraudulent charges, Mrs. Solorio filed a fraud claim with her bank.

2    63. On or about January 29, 2019, Mrs. Solorio's bank confirmed that the

3    charges from Sempris were the result of fraud, and credited her $124.75 of

4    the total $376.20 that was taken from Mrs. Solorio.

5    64. The bank noted that Sempris "has the option to provide supporting

6    documentation within the next two billing cycles that credit was not due. If

7    such documentation indicates you are responsible for the disputed amount,

8    we will rebill your account and mail you a copy of the documentation for

9    your review."

10   65. Sempris never provided Synchrony Bank with any documentation

11   demonstrating the charges were valid.

12   66. Upon information and belief, Sempris does not have any documentation

13   demonstrating that it had any right to charge Ms. Solorio's credit card.

14   67. To date, Mrs. Solorio has never been repaid $251.45 of what Sempris had

15   wrongfully taken from her for the membership that she was enrolled in

16   without her consent.

17   68. Plaintiff has been harmed by having money taken from her by Sempris on a

18   monthly basis without her knowledge or consent.

19                              **CLASS ALLEGATIONS**

20   69. Plaintiff brings this action on behalf of herself and on behalf of all others

21   similarly situated ("the Class and Subclass").

22   70. Plaintiff represents and is a member of the Class, consisting of:

23           All persons within the United States who were charged
24           by Defendant/s and/or their employees and/or agents on a
25           monthly basis for any membership, without consent, in
             the four years prior to the filing of the Complaint.
26

27   71. Plaintiff also represents and is a member of the California Subclass,

28   consisting of:

Kazerouni Law Group, APC
Costa Mesa, California

All persons within California who were charged by Defendant/s and/or their employees and/or agents on a monthly basis for any membership in the four years prior to the filing of the Complaint.

72. Defendants and their employees or agents are excluded from the Class and Subclass.

73. Plaintiff does not know the number of members in the Class or Subclass, but believes the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

74. Plaintiff and members of the Class and Subclass were harmed by the acts of Defendant in that they were charged moneys without providing consent or they were placed into a monthly membership program, but not provided any information on how to opt out.

75. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the class definition to seek recovery on behalf of additional persons as warranted, as facts are learned through further investigation and discovery.

76. The joinder of the Class Members is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendants' records or their agents' records.

77. There is a well-defined community of interest in the questions of law and fact to the Class that predominate over questions which may affect individual Class Members, including the following:

a. whether Defendants enrolled consumer's credit cards in renewing

Kazerouni Law Group, APC
Costa Mesa, California

monthly payments without providing conspicuous disclosures under California's Autorenewal Law, Cal. Bus. & Prof. Code §§ 17600, *et seq*.;

b. whether Defendants' lack of conspicuous disclosures violated California Bus. & Prof. Code §§ 17200 *et seq*.;

c. whether Sempris, and the call centers it utilized, knowingly and intentionally obtained and used persons' credit card information to enroll them in memberships without their consent;

d. whether the Sempris and the call centers it utilizes are an "enterprise" as that term is defined under 18 U.S.C. § 1961(4);

e. whether the Defendants' enrollment of consumers into membership programs and charging of their credit/debit cards is an activity which affects interstate or foreign commerce;

f. whether Sempris and the call center's it utilizes are engaged in a "pattern of racketeering activity" as defined under 18 U.S.C. § 1961(5);

g. whether Sempris and its call centers non-consensual enrollment of consumers into membership programs is a "racketeering activity" as defined under 18 U.S.C. § 1962(1)(D) and 18 U.S.C. § 1028(a)(7);

h. whether Defendants' racketeering activities were a proximate cause of the injuries to the Plaintiff and the proposed members of the Class;

i. whether Plaintiff and the Class and Sub-Class Members were damaged thereby, and the extent of damages for such violation; and

j. whether Defendants should be enjoined from engaging in such conduct in the future.

Kazerouni Law Group, APC
Costa Mesa, California

78. As a person whose credit card was placed on an automatic renewal without her consent and without conspicuous disclosure of terms, Plaintiff is asserting claims that are typical of the Class and Subclass. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

79. Plaintiff and the members of the Class and Sub-Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class and Sub-Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct.

80. Plaintiff has retained counsel experienced in handling class action claims and individual claims involving abusive business practices.

81. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal and state law. The interest of Class and Sub-Class Members in individually controlling the prosecution of separate claims against the Defendants is small because the damages in an individual action for violation of these statutes are minimal.

82. Defendants have acted on grounds generally applicable to the Class and Sub-Class thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class and Sub-Class as a whole.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE AUTOMATIC PURCHASE RENEWAL LAW ("ARL")
### CAL. BUS. & PROF. CODE §§ 17600, *ET SEQ.*

83. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

84. The ARL provides: "[i]t is the intent of the Legislature to end the practice of

ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600.

85. Defendants have engaged in the practice of making automatic renewal offers and continuous service offers, as those terms are defined by Cal. Bus. & Prof. Code § 17600, *et seq*., to California consumers and the general public.

86. By charging Plaintiff at the end of each month for Sempris's Taste for Savings membership, Defendants have enrolled Plaintiff into a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of each month for another month of services, thus constituting an "automatic renewal" as defined by Cal. Bus. & Prof. Code § 17601.

87. Plaintiff is a Consumer under Cal. Bus. & Prof. Code § 17601(d) because Taste for Savings coupon is for personal, family, or household purposes.

88. Taste for Savings coupon is would continue to make purchasing agreements on Plaintiff's account until Plaintiff had canceled the service, thus making it a "Continuous Service" as defined by Cal. Bus. & Prof. Code § 17601(e).

89. As such, Defendants are required under Cal. Bus. & Prof. Code § 17602(a)(1) to conspicuously disclose automatic renewal offer terms stating that: (1) that the subscription or purchasing agreement will continue until the consumer cancels; (2) description of the cancellation policy that applies to the offer; (3) the amount that Defendant will charge each month, and if there is a change in the amount, what this change will be and when it will occur; (4) length of the automatic renewal term or that the service is continuous; and (5) the minimum purchase obligation, if any.

90. Clear and conspicuous manner in the context of a telephone call means in a volume and cadence sufficient to be readily audible and understandable as required by Cal. Bus. & Prof. Code § 17601(c).

91. Upon information and believe, the currently unknown call centers in Colorado and Maine, do not have policies and procedures in place that require their employees to provide adequate conspicuous disclosure of the automatic renewal terms defined in Cal. Bus. & Prof. Code § 17601(c).

92. Because of this, neither Sempris and nor the calls centers provided Plaintiff with any notice that she was going to incur a charge of $24.95 on a monthly basis.

93. Defendants did not inform Plaintiff that one or more of them would charge $1.95 upon the first payment, and then increase the amount to $24.95 for every month after that.

94. Plaintiff was never informed of any method on how to cancel payment, but instead had to rely on the telephone number that was provided in the banking statements.

95. Moreover, if Defendants had included such terms within the moments that their agent attempted to quickly sneak the product into Plaintiff's order of Keranique. This was not done in temporal proximity, to the request for consent to the offer or done in a readily audible and understandable tone.

96. In addition to Defendants' violation of Cal. Bus. & Prof. Code § 17602(a)(1), Cal. Bus. & Prof. Code § 17602(a)(2) provides that it shall be unlawful for any business to charge a consumer credit or debit card for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

97. Plaintiff did not provide consent to be enrolled in Taste for Savings program, let alone be enrolled in an automatic renewal program. Consequently, Defendants enrolled Plaintiff into an automatic renewal program without her

Kazerouni Law Group, APC
Costa Mesa, California

consent in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

98. In addition to requiring that a business provide consumers with conspicuous disclosure of the automatic renewal offer terms and cancellation policy, under Cal. Bus. & Prof. Code § 17602(a)(3), Defendants are required to provide an acknowledgment encompassing these terms, and said acknowledgment must be provided to the consumer in a format that is capable of being retained by the consumer.

99. However, Plaintiff never received a "coupon book" in the mail nor did Plaintiff receive any other piece of information in any retainable form, that detained Sempris' cancellation policy or the automatic renewal offer terms.

100. Sempris charged Plaintiff's and Class Members payment method for an automatic renewal or continuous service without first obtaining Plaintiff's and Class Members' affirmative consent or providing them with an acknowledgment in retainable form containing the automatic renewal offer terms, continuous service offer terms or the cancellation policy.

101. Plaintiff and Class Members paid money for Sempris's services, and as such suffered an "injury in fact" and have lost money and/or property as a result of Defendant's violations of Cal. Bus. & Prof. Code § 17600, *et seq*.

102. Under Cal. Bus. & Prof. Code § 17603:

> In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or products to the business.

103. As a result of Defendants' violations of Cal. Bus. & Prof. Code §

Kazerouni Law Group, APC
Costa Mesa, California

**CLASS ACTION COMPLAINT**

17602(a)(2), Defendant is liable to provide restitution to Plaintiff and Class Members under Cal. Bus. & Prof. Code § 17603.

104. As a result of Defendants' violations of Cal. Bus. & Prof. Code §§ 17602(a), 17602(b), & 17602(c) Defendant is subject under Cal. Bus. & Prof. Code § 17604 to all remedies that apply to a violation of Article 9, of Chapter 1, of Part 3, of Chapter 7 of the Cal. Bus. & Prof. Code.

105. Defendants have engaged in the practice of making automatic renewal offers and continuous service offers, as those terms are defined by Cal. Bus. & Prof. Code § 17600, et seq. ("California's Automatic Purchase Renewal Law"), to California consumers and the general public.

106. Defendants' practices as described above violate the provisions of California's Automatic Purchase Renewal Law, Cal. Bus. & Prof. Code §§ 17600 *et seq.*, in that it fails to adequately notify consumers of material changes to its auto-renewal contracts.

107. Plaintiff and members of the Class have suffered an "injury in fact" and have lost money and/or property as a result of Defendants' violations of Cal. Bus. & Prof. Code § 17600, *et seq.* as alleged above.

108. As a direct and proximate result of Defendants' aforementioned conduct, representations, and omissions, Defendants received and continues to hold monies rightfully belonging to Plaintiff and other similarly situated consumers.

109. As a direct and proximate result of Defendants' violations of Cal. Bus. & Prof. Code § 17600, *et seq.*, Plaintiff and members of the class are entitled to a declaration that Defendants violated the California Automatic Purchase Renewal Law.

110. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

Kazerouni Law Group, APC
Costa Mesa, California

## SECOND CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

111. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

112. Plaintiff and Defendant are each "person[s]" as defined by California Business & Professions Code § 17201.

113. California Bus. & Prof. Code § 17204 allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. California Bus. & Prof. Code § 17204 authorizes a private right of action on both an individual and representative basis.

114. "Unfair competition" is defined by Business and Professions Code Section § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

115. By and through Defendants' conduct alleged in further detail above and herein, Defendants engaged in conduct which constitutes (a) unlawful, (b) unfair, and/or (c) fraudulent business practices prohibited by Bus. & Prof. Code § 17200, *et seq.*

116. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm - that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that

Kazerouni Law Group, APC
Costa Mesa, California

the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

117. Plaintiff's and members of the Subclass have routinely had their payment methods charged by Sempris without them being provided proper notice of the nature of the recurring charges or how to cancel the subscription under Cal. Bus. & Prof. Code § 17600, *et seq*.

118. Had Defendants provided the proper notice of the auto renewal program and how to opt out of it, Plaintiff and members of the Subclass would have understood that Defendants were enrolling the consumers into a membership rewards program, and would have either told Defendants to not enroll them or would have opted out immediately.

119. As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent acts and practices described herein, Defendants have received and continues to hold, unlawfully obtained property and money belonging to Plaintiff and Sub-Class Members in the form of charges to their accounts after Plaintiff and Sub-Class Members cancelled their subscriptions, thereby revoking consent to Defendants to make such charges.

120. Defendant have profited financially from unlawful, unfair, and/or fraudulent acts and practices in the amount of those business expenses and interest accrued thereon.

121. Plaintiff and similarly situated Sub-Class Members are entitled to restitution pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17208 for all monies paid by Sub-Class Members under the purchasing agreements from four years prior to the filing of this complaint to the date of such restitution, at rates specified by law.

Kazerouni Law Group, APC
Costa Mesa, California

122. Defendants should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and Sub-Class Members, from whom they were unlawfully taken.

123. Plaintiff and similarly situated Sub-Class Members are entitled to enforce all applicable penalty provisions pursuant to Cal. Bus. & Prof. Code § 17202.

## *(a) Unfair Prong*

124. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Plaintiff reserve the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

125. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

126. Defendants' conduct here has caused and continues to cause substantial injury to Plaintiff and members of the Sub-Class. Plaintiff and Sub-Class Members have suffered injury in fact due to Defendant's illegally retaining the enrollment of Plaintiff and Sub-Class Members in its auto-renewal program without informing Plaintiff and Sub-Class Members of the existence of the auto renewal membership or methods to cancel the auto

Kazerouni Law Group, APC
Costa Mesa, California

renewal membership. Thus, Defendants' conduct has caused substantial injury to Plaintiff and the Sub-Class Members.

127. Moreover, Defendants' conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendants converted large sums of money from Plaintiff and Sub-Class Members without a valid written authorization, or advanced notice. This systematic scheme is tantamount to theft. Thus, the injury suffered by Plaintiff and Sub-Class Members is not outweighed by any countervailing benefits to consumers.

128. Finally, the injury suffered by Plaintiff and Class Members is not an injury that these consumers could reasonably have avoided. A large portion of the Sub-Class likely expressly informed Defendant/s that they did not want to purchase the membership. Even if they had agreed to be enrolled in the program, Defendants still charged consumers without first  providing information on how to cancel the subscription.

129. These consumers suffered injury in fact due to Defendants' unauthorized charges to their credit cards, debit cards, and bank accounts. As such, Defendants took advantage of their position of perceived power in order to deceive Plaintiff and the Sub-Class Members. Therefore, the injury suffered by Plaintiff and Sub-Class Members is not an injury which these consumers could reasonably have avoided.

130. Thus, Defendants' conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### *(b) Fraudulent Prong*

131. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

Kazerouni Law Group, APC
Costa Mesa, California

132. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

133. Not only were Plaintiff and Sub-Class Members likely to be deceived, but these consumers were actually deceived by Defendant.

134. Through Defendants' non-disclosure of the auto renewal feature, Plaintiff and Sub-Class Members did not believe they were being enrolled into an automatic renewal system.

135. Defendants routinely charged Plaintiff's and Sub-Class Members' accounts without obtaining Plaintiff's and Class Members' express consent, and without providing cancellation information.

136. Defendants had a duty to provide conspicuous notice of the auto renewal feature and how a consumer can escape it, yet Defendants failed to do so. As a result of this Plaintiff and members of the Sub-Class suffered serious economic injury.

137. Plaintiff's reliance is reasonable due to the unequal bargaining powers of Defendants and Plaintiff and Sub-Class Members. For the same reason, it is likely that Defendants' fraudulent business practice would deceive other members of the public.

138. Defendants' failure to obtain a valid authorization to automatically charge consumers' proffered method of payment, is an unfair, unlawful and fraudulent scheme.

139. Thus, Defendants' conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

### *(c) Unlawful Prong*

140. California Business & Professions Code § 17200 prohibits "any unlawful ... business act or practice."

**CLASS ACTION COMPLAINT**

141. As explained above, Defendants deceived Plaintiff and other Class Members by enrolling Plaintiff and Sub-Class Members into autorenewal programs without providing conspicuous notice of the autorenewal program or the cancellation policy for the autorenewal program.

142. Defendants' acts, as pled herein, are an "unlawful" business practice or act under Business and Professions Code Section 17200, *et seq*., including violations of California Business & Professions Code §§ 17600, *et seq*.

143. Defendants' conduct caused and continues to cause economic harm to Plaintiff and Sub-Class Members.

### *(d) "Unfair, Deceptive, Untrue or Misleading Advertising" Prong*

144. Sempris's advertising is unfair, deceptive, untrue or misleading in that consumers are led to believe that they are purchasing one product, when in fact, Sempris is adding an additional membership on top of the purchase.

145. Plaintiff, a reasonable consumer, and the public would likely be, and, if fact were, deceived and misled by Sempris's advertising as consumers believed that they were ordering only one product, but in fact, Defendants were enrolling the consumer in another program without their consent.

146. Defendants' unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue or misleading advertising present a continuing threat to the public because Defendants continue to engage in unlawful, unfair, and deceptive conduct that harms consumers.

147. Defendants engaged in these unlawful, unfair, and fraudulent business practices motivated solely by Defendant's self-interest with the primary purpose of collecting unlawful and unauthorized monies from Plaintiff and all others similarly situated; thereby unjustly enriching Defendants.

148. Such acts and omissions by Defendants are unlawful and/or unfair and/or fraudulent and constitute a violation of Business & Professions Code section

Kazerouni Law Group, APC
Costa Mesa, California

17200, *et seq*.  Plaintiff reserves the right to identify additional violations by Defendant as may be established through discovery.

149. As a direct and proximate result of the aforementioned acts and representations described above and herein, Defendants received and continues to receive an unfair competitive advantage and unearned commercial benefits at the expense of its competitors and the public.

150. Through this conduct, Defendants violated California Business and Professions Code § 17200, *et seq*., by engaging in business practices that are unlawful, unfair, or fraudulent.

151. As a direct and proximate result of Defendants' unlawful, unfair and fraudulent conduct described herein, Defendants have been and will continue to be unjustly enriched by the receipt of ill-gotten gains from customers, including Plaintiff, who unwittingly provided money to Defendants based on Defendant's misleading representations or omissions of material fact relating to the transactions.

152. Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendant as a result of Defendants' false representations or material omission set forth above.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF  THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ("RICO") ACT
### 18 U.S.C. § 1962(C)

153. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

154. Sempris together with a telemarketing center in Colorado and Maine, violated the Federal RICO statute and Plaintiff was injured as a result.

### *Persons*

155. Sempris and each of the telemarketing call centers are entities capable of holding legal or beneficial interest in property and is therefore a "person"

**CLASS ACTION COMPLAINT**

Kazerouni Law Group, APC
Costa Mesa, California

within the meaning of 18 U.S.C. § 1961(3).

### *Enterprise*

156. Sempris and each telemarketing call centers together formed an association-in-fact for the common and continuing purpose described herein, which constitutes an enterprise within the meaning of 18 U.S.C. § 1962(4).

157. The members of the enterprise function as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

158. Sempris and each telemarketing call centers are part of an association-in-fact that jointly works to achieve its common purpose of upselling "1-800" products with reward club memberships; and, if the consumer declines, to unlawfully enroll the consumer in a renewal program without their consent and without conspicuous disclosure under California's Autorenewal Law, as described herein.

159. Sempris and each telemarketing call centers have organized together to perform different functions of the racketeering activity.

160. The two telemarketing centers in Maine and Colorado obtain consumers' credit card information from unrelated product purchase. Sempris then pays these telemarketing call centers a per-customer commission for the consumer's credit card information.

161. Subsequently, Sempris, knowing it does not have the consumers' consent, charges their credit card or debit card monthly for unwanted memberships.

162. Through this scheme, Sempris and the telemarketing centers have made a considerable profit from the consuming public.

163. Defendants' association thereby constitutes an enterprise as that term is defined under 18 U.S.C. § 1961(4).

**CLASS ACTION COMPLAINT**

*Kazerouni Law Group, APC*
Costa Mesa, California

### ***Defendants Engaged in and Affected Interstate Commerce***

164. Sempris and each telemarketing call centers engage in and affect interstate commerce by having a call center in Colorado and Maine collect and transfer consumer information to Sempris in Minnesota.

165. This consumer information includes Plaintiff's credit card, which was repeatedly charged in Minnesota on a monthly basis.

166. This consumer information also includes the Class members' credit cards and/or debt cards, which were repeatedly charged on a monthly basis.

167. Upon information and belief, throughout the Class Period, Sempris purported to mail "coupon books" to "purchasers," each of which reside in all 50 states, but fail to do so.

### ***Pattern of Conduct or Participation***

168. As detailed above, Sempris (through the names Provell Inc. and Damark International) has unlawfully enrolled consumer credit cards into reward club memberships without the consumers' consent for almost two decades by utilizing a telemarketing centers in Colorado and Maine to upsell other products.

169. There are hundreds of complaints online, all demonstrating the exact same basic conduct.

170. During the Class period, Consumers called in regarding an "As Seen On T.V." product. Then, after ordering this product, and only this product, the individual's credit card would be charged approximately $24.95 on a monthly basis.[2]

---

[2]  https://www.bbb.org/us/mn/hopkins/profile/dining-club-plans/sempris-llc-0704-96345570/complaints#173596288

https://complaintwire.org/complaint/Gvd7CSc7Ggc/wc-mon-taste-4-savings

https://www.complaintsboard.com/complaints/wcmon-taste-4-savings-idid-not-

171. Sempris and the unidentified telemarketers together have continuously engaged in such practice for almost two decades, and continue to do this conduct to this day.

### *Racketeering Activities - 18 U.S.C. § 1961(1)*

### 1. Violations of 18 U.S.C. § 1343

172. According to 18 U.S.C. § 1343 it is unlawful to devise, or intend to devise, any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, transmits or causes to be transmitted by means of wire in interstate commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

173. Sempris, using the telemarketing agencies in Colorado and Maine, caused to be transmitted a scheme to defraud consumers into purchasing rewards club memberships.

174. Sempris encouraged telemarketers to perform cram scams through the telephone. These cram scams would sneak other products into transaction without the consumers' consent.

175. If this cramming scam did not work, as in Plaintiff's case, Sempris, through its telemarketing agents, would still obtain the credit card information under the false pretense that the card would only be used to purchase the item that the consumer originally called for.

176. All of this was transmitted through the telephone, while each party was located in different states.

177. Plaintiff and other similarly situated members of the Class have suffered compensable injury proximately caused by the Defendants' violations of 18 U.S.C. § 1343.

### 2. Violations of 18 U.S.C. § 1341

authorize-or-order-your-services-c731799.htm
Case #                                    25 of 32                    *Solorio v. Sempris LLC et al.*
CLASS ACTION COMPLAINT

Kazerouni Law Group, APC
Costa Mesa, California

178. According to 18 U.S.C. § 1341 it is unlawful to devise, or intend to devise, any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent representations, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, or, any matter or thing whatever to be sent or delivered by the Postal Service.

179. After receiving disputes that consumers' credit cards were being charged without consent, Sempris would mail out a confirmation letter claiming that each consumer had provided consent for Sempris to charge each consumer's credit card. Such representation is false, as Sempris was not provided with consent from these consumers, but instead charged consumer cards without any consent.

180. Sempris mailed out these misrepresentations of fact to avoid detection and to perpetuate its scheme.

181. Plaintiff and other similarly situated members of the Class have suffered compensable injury proximately caused by the Defendants' violations of 18 U.S.C. § 1341.

### FOURTH CAUSE OF ACTION
### CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ("RICO") ACT
### 18 U.S.C. § 1962(D)

182. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

183. In violation of 18 U.S.C. § 1962(d), Defendants knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation and management of a RICO enterprise through a pattern of racketeering activity as alleged herein.

184. The conspiracy commenced as early as the early 1990s and is still actively ongoing.

**CLASS ACTION COMPLAINT**

Kazerouni Law Group, APC
Costa Mesa, California

185. The conspiracy's purpose is to obtain consumer credit card information, and then sell this information to Sempris, which enrolls the consumer into a rewards club membership without the consumer's knowledge or consent.

186. The telemarketing centers within Colorado and Maine have performed the overt act of collecting consumer financial information under the misrepresentation that it is being collected solely to be purchase the desired item. Unbeknownst to the consumer, these telemarketers sell the consumer information to Sempris.

187. Sempris committed at least one overt act in furtherance of such conspiracy, including charging the consumer credit card each month despite having no proof that the consumer consented to this.

188. Sempris also committed the overt act of perpetuating the scheme by misrepresenting to consumer's that Sempris had documents demonstrating that the consumer consent to the automatic withdrawals.

189. Defendants colluded together to create and implement a system for obtaining and charging customers' credit card information without the consumer's knowledge or consent.

190. Even if Sempris and the telemarketing centers did not formally agree to harm Plaintiff specifically, the purpose of the conduct engaged in was to advance the overall objective of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of these parties' actions.

191. Plaintiff and other similarly situated members of the Class have been injured and continue to be injured by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d).

192. The unlawful action of Defendants have directly, illegally, and proximately caused and continues to cause injuries to Plaintiff and other similarly situated individuals.

///

**CLASS ACTION COMPLAINT**

Kazerouni Law Group, APC
Costa Mesa, California

///

///

### FIFTH CAUSE OF ACTION
### CONVERSION

193.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

194.     Plaintiff and Class and Subclass members held lawful rights in the personal property that Defendants' withdrew from their accounts through its autorenewal program.

195.     Defendant engaged in an unlawful act when it exercised dominion over Plaintiff and Class members' and Subclass members' property when they charged Plaintiff's and Class Members' credit and debit cards without their consent or knowledge.

196.     Defendant acted with malice, oppression or fraud in obtaining these funds it was not entitled to.

197.     As a result of the control over Plaintiff and Class members' and Subclass members' personal property, Plaintiff and Class members and Subclass members suffered monetary damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants, and each of them:

- that this action be certified as a Class Action;
- that Plaintiff be appointed as the representative of the Class;
- that Plaintiff's attorneys be appointed Class Counsel;
- that Defendant be enjoined from continuing the wrongful conduct alleged herein and be required to comply with all applicable laws.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE AUTOMATIC PURCHASE RENEWAL LAW ("ARL")
### CAL. BUS. & PROF. CODE §§ 17600, *ET SEQ.*

*Kazerouni Law Group, APC*
Costa Mesa, California

- That the Court find and declare that Defendants have violated Cal. Bus. & Prof. Code § 17602 by charging Plaintiff and class members payment method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer term or continuous service offer terms prior to charging their debit or credit cards;

- That the Court find and declare that Defendant have violated Cal. Bus. & Prof. Code § 17602 by making a material change to the terms of the agreement without providing advanced clear and conspicuous notice of the material change and information regarding how to cancel in a manner that is capable of being retained by Plaintiff and Sub-class members;

- That the Court find that Plaintiff and class members are entitled to injunctive relief and/or restitution pursuant to Cal. Bus. & Prof. Code § 17535;

- That the Court find that Defendants are in possession of money that belongs to Plaintiff and Sub-Class members that Defendants have not returned the money;

- That the Court award Plaintiff and Sub-Class members damages and/or full restitution in the amount of the subscription payments made by them pursuant to Cal. Bus. & Prof. Code § 17603 in an amount to be proved at trial;

- An order requiring imposition of a constructive trust and and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiff and all Sub-Class members and to restore to Plaintiff and Sub-Class members all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

Kazerouni Law Group, APC
Costa Mesa, California

- That Plaintiff and Sub-class members be awarded costs and reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and/or other applicable law;

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ*.**

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Bus. & Prof. Code § 17206(b), for Plaintiff;

- An order requiring Defendants to pay restitution to Plaintiff and class members due to Defendants' UCL violations, pursuant to Cal. Bus. & Prof. Code §§ 17200-17205, in the amount of their subscription agreement payments;

- That Defendants be enjoined from continuing the wrongful conduct alleged herein and required to comply with all applicable laws;

- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1021.5 for Plaintiff; and

- Any and all other relief as this Court may deem necessary or appropriate.

**THIRD AND FOURTH CAUSES OF ACTION FOR**
**VIOLATIONS OF RICO AND CONSPIRACY TO VIOLATE RICO**
**18 U.S.C. §§ 1962, *ET SEQ*.**

- compensatory damages, for a sum trebled, plus interest to the Class pursuant to 18 U.S.C. § 1964(c);

- an award of attorneys' fees, together with all costs and expenses, pursuant to 18 U.S.C. § 1964(c); and

- any and all other relief that this Court deems just and proper.

**FIFTH CAUSE OF ACTION FOR**
**CONVERSION**

- An order requiring imposition of a constructive trust and/or disgorgement of Rite Aid's ill-gotten gains and to pay restitution to Plaintiff and all

Kazerouni Law Group, APC
Costa Mesa, California

members of the Class and Subclass and, also, to restore to Plaintiff and members of the Class and Subclass all funds acquired by means of any act or practice declared by this court to be an unlawful and/or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

- Punitive damages to Plaintiff and the Classes for Defendant's malicious, oppressive or fraudulent misconduct; and
- Any and all other relief that this Court deems just and proper.

## TRIAL BY JURY

198. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: June 24, 2019                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: _s/ Abbas Kazerounian_____
ABBAS KAZEROUNIAN, ESQ.
AK@KAZLG.COM
ATTORNEYS FOR PLAINTIFF

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
Nicholas R. Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fisher Avenue, Suite D1
Costa Mesa, CA 92626
Telephone:   (800) 400-6808
Facsimile:    (800) 520-5523
*Attorneys for Plaintiff*

**HYDE & SWIGART, APC**
Joshua Swigart, Esq. (SBN: 225557)

**CLASS ACTION COMPLAINT**

Kazerouni Law Group, APC
Costa Mesa, California

josh@westcoastlitigation.com
2221 Camino Del Rio S Ste 101,
San Diego, CA 92108-3609
Telephone:   (619) 233-7770
Facsimile:   (619) 297-1022

**NORDEAN LAW, APC**
Sam Nordean, Esq. (SBN: 284398)
sam@nordeanlaw.com
245 Fisher Avenue, Suite D1
Costa Mesa, CA 92626
Telephone:   (949) 236-6296
Facsimile:   (888) 254-3222

**CLASS ACTION COMPLAINT**